Mel Marin  
Box 120006  
San Diego, CA 92112  

May 15, 2025  

Plaintiff,  
*Pro Se*

FILED  
Jun 03 2025  
CLERK, U.S. DISTRICT COURT  
SOUTHERN DISTRICT OF CALIFORNIA  
BY     s/ Al     DEPUTY

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

MEL MARIN,

Plaintiff,

v.

THE PEOPLE'S REPUBLIC OF CHINA, ALTER EGO OF SHANDONG POTENCE SPORTING GOODS CO., LICHENG, CHINA dba FRIDAY GOODS, 871 HAROLD PL SUITE 311, CHULA VISTA, CA 91914  
MARVIN VIERNES, 975 CAMINO LEVANTE CHULA VISTA, CA 91913

Defendants.

Case **'25CV1408 AGS DDL**

COMPLAINT FOR PRODUCT LIABILITY FOR DAMAGES

1. The court has jurisdiction under 28 U.S.C. § 1330 because it is an action against a foreign state, The People's Republic of China who is running a profit making business and alter ego of Shandong Potence Sporting Goods Co., of Licheng, China, and its business partner in California is Marvin Viernes at 871 Harold Pl Suite 311, Chula Vista, CA 91914.

2. On about January 15, 2023, plaintiff bought an electric scooter from Shandong Potence (hereafter "Friday Goods") through Defendan Viernes.

3. Under Communist Chinese Law the People's Republic of China maintains a 51% ownership over Shandong Potence and is its alter ego. Therefore, the real party

in interest is China, and it does its sales for profit business from a warehouse in Chula Vista and expects to be hailed into California courts.

4. Marvin Viernes is its California business partner who sold an electric scooter to plaintiff on information and belief shipped by its manufacturer or intermediate supplier Shandong Potence Sporting Goods Co.

5. But the scooter had a design or manufacturing defect unknown to plaintiff at the time of delivery: the rubber was not seated properly on the wheels and the air plug was curved to pinch the rubber so that at a certain random point in loss of air by simply riding on the scooter in mild wear and tear, the air plug would cause a fast leak and create a flat tire by surprise.

6. This defect was exposed to plaintiff on his ride to the San Diego Airport to catch a flight to Ohio on about June 5, 2024 to appear for a deposition in a personal injury lawsuit the next morning.

7. Half way to the airport the tire had a complete flat with no prior warning.

8. Because of that flat, plaintiff missed the flight.

9. Plaintiff quickly paid for the last flight available that night but that flight was delayed and plaintiff was finally told it would not leave until the next day and arrive after the deposition was over.

10. Because plaintiff missed that deposition and opposing counsel would not reschedule, plaintiff's case was dismissed.

11. The value of that action was $15 million.

12. The court of appeals made that loss final by denying appeal on about April 3, 2025.

13. Therefore, plaintiff had an opportunity cost loss of $15 million and the defect in the tire was an actual, proximate, or substantial caus of that entire loss.

14. It does not matter if another possible source of failure was in part also a cause of that loss like the stubborn refusal if the opposing counsel to reschedule the

deposition, or the widely unreasonable policy of the court to dismiss a case after missing one deposition, or from any other planning steps missed by plaintiff, as long as the jury finds that flat tire to have been a substantial cause as well, and the court may make a full award for the lost value on that basis, under the rule in Scirex Corp. v. Federal Ins. Co., 313 F.3d 841, 849-50 (3d Cir. 2002)(the direct cause of a loss "does not have to be the sole cause or immediate cause" of plaintiff's loss for him to prevail, "but need only be a proximate or substantial cause" of the loss to allow a damages award).

15. Plaintiff did attempt to find a "back-up" flight after getting the news of the lost flight on Frontier Airlines at 11pm that night, but none were available that would arrive on time.

16. A victim states a claim when he alleges and proves the seller placed a defective product into the stream of commerce and it caused harm, for which the seller is strictly liable. Greenman v. Yuba Power Products, Inc., 59 Cal. 2d 57, 27 Cal. Rptr. 697 (1963).

17. These defendants did place this defective scooter into the stream of commerce and sold it to this plaintiff.

18. A victim also states a claim when the seller knew or should have known of this defect and failed to warn. Anderson v. Owens-Corning Fiberglas Corp., 53 Cal. 3d 987, 996, 281 Cal. Rptr. 528 (1991).

19. When plaintiff went to the repairman for the defendants in San Diego to determine the cause of the flat, he led plaintiff to believe that plaintiff was "scammed" because he had fixed this same tire problem over and over for that seller's scooters and that he seller Viernes wa well aware that the tires wold fail early and quickly once that random small loss of air caused a pinch in the rubber, but that Viernes kept selling the same scooter for the same Chinese company anyway.

20. WHEREFORE, Mel is entitled to damages in the amount of $15 million as compensation for the entire loss of that case and for the effect on plaintiff's injuries from the inability to collect money to pay for treatments to avoid more deterioration in plaintiff's medical condition.

21. Additionally, because the defendants knew hey were causing this problem and refused to correct it or to warn, they are guilty of malice entitling plaintiff to punitive damages against each party in the supply chain, and for which plaintiff claims an additional $50 million, or one-third of the net worth of each defendant as allowed by Adams v. Murakami, 54 Cal.3d 105,112 (1991)(California courts have allowed up to 33% of net worth for punitive damages), whichever the court may allow.

22. These allegations are verified.

DATED: May 15, 2025

                                                   Mel Marin

Box 120006<br>
San Diego, CA 92112<br>
<br>
June 2, 2025

Clerk<br>
U.S. District Court<br>
333 W. Broadway St.<br>
San Diego, CA 92101

RE:  <u>Marin v. China, et al</u>

Dear Sir,

    The attached new complaint is identical as the one filed May 15, 2025 with the assigned number 25CV1250 TWR DDL.

    I re-file it because when I filed in May 2025 I was a debtor in a bankruptcy and, therefore, I was not the real plaintiff in interest and, therefore, this court had no subject matter jurisdiction because it had no plaintiff.   So that filing may be void.  <u>In re Merrick</u>, 175 B.R. 333, 336 (B.A.P.  9th Cir. 1994) (only the trustee may take offensive action on a debtor's claim without approval of the court because "a debtor's lawsuit constitutes a chose in action that is property of the estate"); <u>Neilsen v. Thornell</u>, 101 F.4th 1164, 1179 (9th Cir. 2024)("We lack jurisdiction to reach the merits of this case . . . because there is no plaintiff before us who has both Article III standing and live claims"); <u>Citibank, NA v. Park-Kenilworth Industries, Inc.</u>, 109 BR 321, 322 (N.D. Ill. 1989)(substitution of bankruptcy trustee in for plaintiff debtor is not automatic, and requires a motion to intervene, so there is no plaintiff until that happens).

    I filed believing the ruling of Judge Ohta in another action that a plaintiff debtor could pursue his own claims without approval of the bankruptcy court.  But my additional research suggests that debtor does not have any causes of action of his own until the bankruptcy court abandons them from the estate, which was not done for this claim. So all my filings and orders in this court concerning me may have been void as of December 9, 2024.  <u>Lane v. Vitek Real Estate Industries Group,</u> 713 F. Supp. 2d 1092, 1097 (E.D. Cal. 2010) (borrower has no standing to sue because "a bankruptcy petitioner loses standing for any causes of action and the estate becomes the only real party in interest unless the bankruptcy trustee abandons the claims").

    I file now, because the bankruptcy action was dismissed Friday.

Sincerely,<br>
<i>Mel Mar</i><br>
Mel  Marin